IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION


STEPHEN TERRY BRITT,              :

      Petitioner,              :

vs.                              : CIVIL ACTION NO. 12-0173-KD-C

UNITED STATES OF AMERICA,        : CRIMINAL ACTION NO. 10-0116-KD-C

      Respondent.


## REPORT AND RECOMMENDATION

This cause is before the Court on petitioner Stephen Terry Britt's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 186), the response in opposition filed by the United States (Doc. 190), petitioner's traverse to the government's response (Doc. 193), and Britt's motion to amend (Doc. 196). This action has been referred to the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Following consideration of all relevant pleadings in this case, it is recommended that Britt's § 2255 motion be **DENIED**.

## FINDINGS OF FACT

On May 27, 2010, Britt was indicted on one count of conspiracy to manufacture methamphetamine in violation of 21 U.S.C. § 846,[1] one count of possession of a List I

---

[1] Because the amount of mixture and substance containing methamphetamine involved in the conspiracy was alleged to exceed 500 grams, the indictment informed Britt that he was subject to the penalty provisions in 21 U.S.C. § 841(b)(1)(A). "In the case of a violation of subsection (a) of this section involving 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers[,] such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life . . . . If any person commits such a violation *after a prior conviction for a felony drug offense has become final*, such person shall be sentenced to a term of imprisonment which *may not be less* (Continued)

chemical—pseudoephedrine—with knowledge and reasonable cause to believe it would be used to manufacture a controlled substance in violation of 21 U.S.C. § 841(c)(2), one count of attempt to manufacture methamphetamine in violation of 21 U.S.C. § 846,[2] one count of using and carrying a firearm in connection with a drug trafficking offense and possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A), and one count of possessing with to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1).[3] (Doc. 1, at 1-4.)[4] Britt, who was in state custody, made his initial appearance in this Court on June 16, 2010 (*see* Doc. 17), was arraigned on all charges on June 23, 2010 (Doc. 25), and was ordered detained on June 24, 2010 (Doc. 26).

---

*than 20 years* and not more than life imprisonment[.]" 21 U.S.C. § 841(b)(1)(A)(viii) (emphasis supplied).

[2]    Because the amount of mixture and substance containing methamphetamine involved in the attempt to manufacture methamphetamine was alleged to exceed 50 grams, the indictment informed Britt that he was subject to the penalty provisions in 21 U.S.C. § 841(b)(1)(B). "In the case of a violation of subsection (a) of this section involving 5 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers[,] such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years . . . . If any person commits such a violation *after a prior conviction for a felony drug offense has become final*, such person shall be sentenced to a term of imprisonment which *may not be less than 10 years* and not more than life imprisonment[.]" 21 U.S.C. § 841(b)(1)(B)(viii) (emphasis supplied).

[3]    Finally, because the amount of mixture and substance containing methamphetamine involved in the possession with intent to distribute methamphetamine count was alleged to be less than 50 grams, the indictment informed Britt that he was subject to the penalty provisions in 21 U.S.C. § 841(b)(1)(C). "In the case of a controlled substance in schedule I or II . . ., such person shall be sentenced to a term of imprisonment of not more than 20 years[.] . . . If any person commits such a violation *after a prior conviction for a felony drug offense has become final*, such person shall be sentenced to a term of imprisonment of not more than 30 years[.]" 21 U.S.C. § 841(b)(1)(C) (emphasis supplied).

[4]    The indictment also contains a forfeiture allegation in which Britt was named. (*See id.* at 4-5.)

During the July 8, 2010 Probation Office Conference, which was attended by Britt and his retained attorney, Jeff Deen, Esquire, petitioner was informed that enhanced penalties may apply based on a prior felony drug conviction (Doc. 40, at 1) but, as well, that if convicted on count four (the gun count), there would be "a mandatory consecutive 5 yr custody sentence to the [computed guideline] range (minus 2 level enhancement for gun)[.]" (*Id.* at 8.) Some four days after the probation office conference, that is, on July 12, 2010, the government filed the following information:

> The defendant, **STEPHEN TERRY BRITT,** has been previously convicted of a felony drug offense, to-wit[:] *United States v. Britt*, Criminal No. 95-000134-AH, in the United States District Court for the Southern District of Alabama, for conspiracy to possess with intent to distribute marijuana, a Schedule I controlled substance; therefore, he is subject to the penalty provision in Title 21, United States Code, Section 851[5] and the second and subsequent penalties contained in Sections 841(b)(1)(A), (B) and (C) as charged in the above[-]captioned indictment.

(Doc. 44 (footnote added).)[6]

At the pretrial conference on July 12, 2010, Britt (through counsel) notified the undersigned that he was desirous of entering a guilty plea (Doc. 47)[7] and, on July 20, 2010, Britt entered a counseled guilty plea to counts one and four of the indictment (*see* Doc. 187, at 19-20), in accordance with the plea agreement which was filed on July 21, 2010 (*compare id.* at 16-17 ("My copy is the one that we have used, Your Honor. So I don't

---

[5]   "No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court . . . stating in writing the previous convictions to be relied upon." 21 U.S.C. § 851(a)(1).

[6]   Britt admitted this prior drug conviction during sentencing in the present case. (*See* Doc. 188, at 9 ("I was here [1]4 years ago for marijuana.").)

[7]   One week later, on July 19, 2010, the government filed a notice of intent to offer 404(b) evidence, which included his federal conviction in *United States v. Britt, et al.*, Criminal No. 95-00134-AH. (*See* Doc. 50.)

have that before me.") *with id.* at 14 ("He doesn't want to get the extra five years but it's going to be 25 if he doesn't get some kind of agreement about cooperating. . . . I talked to him. We have already got the plea agreement. . . . Give him one last chance.") and Doc. 52, at 1 ("The defendant waives rights b through e, listed above, and pleads guilty to Counts 1 and 4 of the Indictment, charging violations of Title 21, United States Code, Section 846, conspiracy to manufacture methamphetamine, a Schedule II controlled substance, and of Title 18, United States Code, Section 924(c)(1), using and carrying a firearm in connection with a drug trafficking felony.")). And while Britt is correct that when he initially appeared before the Court on July 20, 2010, he had decided to not plead in accordance with the plea agreement he and his attorney signed on July 19, 2010 (*see* Doc. 52, at 13)—he insisted he was not guilty of the gun charge and desired to plead only to the conspiracy charge (*see* Doc. 187, at 4-6 (Britt's attorney informed the court that Britt was not pleading pursuant to the plea agreement anymore and, instead, was pleading only to the conspiracy count—count one—and planned to go to trial on the remaining counts since the government was not going to dismiss the remaining counts and the Assistant United States Attorney was insisting that Britt plead to the gun count, while Britt was insisting he never possessed the gun))—just as the Court was about to take his guilty plea to the conspiracy count (*id.* at 13; *see also id.* at 8-13 (the court explained to Britt—and petitioner indicated his understanding—that given his prior drug conviction he was facing a statutory mandatory minimum sentence of twenty years to life, that he had the right to proceed to trial and have the government prove his guilt beyond a reasonable doubt and that by pleading guilty he was waiving the right to a trial as to count one, and Britt also indicated that he believed the government could prove the facts establishing his participation in a conspiracy to manufacture more than 500 grams of

4

methamphetamine[8])), his retained attorney asked the Court to give him one additional

---

[8]       (*Compare* Doc. 187, at 10-11, 11, 11-12, 12 & 13 ("[On the conspiracy charge, 21 U.S.C. § 846,] [t]he government would be required to prove that two or more individuals came to a mutual understanding to commit an unlawful act. In this case the manufacture of methamphetamine. And second, that each of the defendants, knowing of the unlawful purpose of the plan, knowingly and intentionally joined in the plan. The government would expect the evidence to establish that both of these defendants were encountered by law enforcement officers . . . on several occasions during the course of the investigation, which began, I believe, in 2007, I think is when the pharmacy records go back. Anyway, each of the defendants was encountered by law enforcement officers on multiple occasions in connection with the manufacture of methamphetamine. . . . [A]t least in December of 2009, Mr. Vozar . . . implicated himself and Mr. Britt in the manufacture of methamphetamine, corroborated by the items which were found in Mr. Vozar's possession at that time. And as a result of information he provided about Mr. Britt[,] Mr. Britt was likewise arrested on state charges involving manufacture of methamphetamine and implicated by a number of individuals who agreed to cooperate with the government. The defendant was implicated by probably five or six members of the manufacturing conspiracy. . . .   The codefendant Samantha Ivey was a substantial contributor to the pseudoephedrine and was implicated in approximately four hundred boxes of pseudoephedrine that was supplied to the defendant Britt for his use in manufacturing. The government would expect that it could establish more than five hundred grams of methamphetamine that was manufactured in this manner. . . . [The manufacturing occurred] [a]t various locations[,] [o]ne of which was a trailer in Mobile County occupied by another defendant Kenneth Green. . . . Mr. Britt was in the process of manufacturing methamphetamine there when the police arrived at that location and he destroyed a substantial quantity of the manufacturing substances by throwing them into the bathtub and into the toilette as the police were entering there.") *with* Doc. 52, Factual Resume, at 5, 5-6, 8, 9, 10, 13, 19, 19-20, 20, 21 & 22 ("[On October 31, 2008, Corey] Jackson agreed to answer questions. He said they were meeting a white male he knew as 'Terry,' who lived around the corner from the gas station. Jackson said he was going to trade '[T]erry' a box of 'red hots' for some oxycontin and Lortab. . . . Jackson [] admitted that he knew 'Terry' would use the pills to make methamphetamine because he had dealt with 'Terry' before. Jackson agreed to show the deputies where 'Terry" lived on Kushla Station Road in Eight Mile. . . [Jacob] Phillips also agreed to answer questions and told the officers that they had purchased a box of pills from CVS Pharmacy on Moffett Road and two boxes of pills from the pharmacy at Wal-Mart in Semmes. Phillips said he had come to the gas station to meet Terry Britt to sell two boxes of pills for $40 per box. Phillips admitted that he knew Britt would use the pills to make meth. . . .   [On June 2, 2009, Rodney] Vozar stated that he was currently dating Samantha Ivey, and he had seen Ivey buy pseudoephedrine pills with her own driver[']s license and with other driver[]s['] licenses during the last six months. . . . Vozar stated that Ivey usually got between 10 to 15 boxes of pseudoephedrine pills a day when he went with her. . . . He said that Ivey would give him the pseudoephedrine pills and he would supply them to Steven Terry Britt. Vozar stated that he was the main lookout for Britt while Britt cooked at Britt's property. Vozar said Britt would usually smoke off between 80,000 to 150,000 milligrams of pseudoephedrine in each cook. Vozar exchanged pills for finished methamphetamine. Vozar would give the finished methamphetamine to Samantha Ivey, and she would either use or sell it. Vozar said he had been helping Britt cook for about a year. He estimated that they had manufactured about 120 times on Britt's property [o]n Highway 45 in Mobile County. . . . Vozar has known Britt for about a year and a half. He said Britt cooked every day, and in a three month period, he estimated Britt cooked about 90 times.  . . . Britt cooked any amount of pills from six (Continued)

boxes on up. . . . Lennie Paul McDonald was interviewed by TFO Matt O'Brien in November of 2009 following McDonald's arrest on federal drug charges. . . . McDonald said he was getting methamphetamine from his brother Carlos Lee McDonald until he was arrested on federal drug charges in 2008. Thereafter, he got methamphetamine from Steven Terry Britt and Todd Britt. He bought 4 to 5 grams of meth per week from Steve. . . . On July 24, 2009, Michael Ledkins, also arrested on federal drug charges and seeking to cooperate with the Government, provided information to the deputies about Britt. He identified Britt as a person who helped on meth cooks. Ledkins stated that his brother Josh Ledkins had just met Britt around the time of his last arrest, and Josh and Britt exchanged boxes of pills. Usually Britt cooked his own meth, according to Ledkins. Josh would buy or swap boxes of pills with Britt, and Britt would give Josh a gram or more of finished product per box of pills. . . . On October 28, 2009, ABC Agent Kevin Wright received information from a reliable confidential informant that he/she had just left a residence at 8724 Glen Acres Drive North where a white male known only as 'Ken' stated that 'they had just finished a cook.' The informant detected the odor of ammonia, and believed that there were other people at the residence in addition to 'Ken.' The informant stated that there was a white pickup truck there as well, and that if the pickup truck left, the drugs would be in it. Agent Wright and Deputies Steve Leger and JR Sullivan responded to that location. They observed as a white pickup drove out of the driveway onto Glen Acres Drive. They followed the truck until they observed as it committed a traffic infraction. . . . Deputy Leger . . . stopped the truck[.] . . . The driver, identified as Daniel DeWayne Conner, stated that he did not have a valid license. . . . Agent Wright spoke to Conner, inquiring where he had been and who owned the vehicle. Conner stated that he had been at Ken's house and that the vehicle he was driving belonged to Steven Terry Britt. Conner also stated that Britt was at the residence on Glen Acres Drive. Britt also had active arrest warrants outstanding. Agent Wright knew both Conner and Britt from prior methamphetamine manufacturing investigations. He and several deputies returned to the residence. When they arrived . . ., it was shortly after midnight on October 29. As they approached the trailer there, they observed lights on inside the trailer as well as a wooden structure [] at approximately fifty yards to the right rear of the trailer. Deputies Busby, Powell and Sullivan passed the trailer and walked to the shed behind the trailer because they believed an unknown person had fled from the trailer when they got out of their vehicles. Agent Wright knocked on the front door of the trailer several times with no one responding[.] . . . Kenneth Lee Green also known as Ken came to the front door and stated that it would not open. He told Agent Wright to come to the back door and he would admit the officers. Agent Wright then walked to the back as he told other deputies that Green would open[] the back door. Through a crack in the partially opened back door, Deputy O'Shea observed Steven Terry Britt hurriedly walk past the door carrying a glass jar that was smoking. Deputy O'Shea then made entry through the back door in an effort to prevent Britt from destroying evidence of the manufacturing process they believed to be ongoing at that time. Deputy O'Shea immediately noticed the overwhelming odor of ammonia in the residence and he heard glass breaking as the toilet was flushing. Deputy O'Shea ran to the bathroom and observed Britt there, a liquid on the toilet and smoke emitting from the bathtub. Deputy O'Shea ordered Britt to get on the floor and Britt refused to follow commands or to submit to arrest. The fumes from the cloud of smoke emanating from the toilet began to affect his breathing and was irritating his eyes as he and Agent Wright briefly struggled with Britt. They were finally able to subdue him. Deputy Leger found that Kenneth Lee Green was also present in the trailer, and took him into custody. Both Green and Britt were removed from the trailer because of the overwhelming odor of ammonia, although Britt and Green appeared to be unaffected by it. . . . Deputy Busby approached the shed, and the odor of ammonia was also detected there. Deputy Busby had previously knocked

(Continued)

6

opportunity to convince his client to plead guilty to both counts one and four in

accordance with the plea agreement and was granted that opportunity (*see id*. at 13-14).

> MR. DEEN:   Can I talk to him? These meth heads, they just can't –
> like he is going to get twenty. He doesn't want to get the extra five years
> but it's going to be 25 if he doesn't get some kind of agreement about
> cooperating. Which the Deputies say they want to talk to him. I think he is
> screwing himself. I think now that he is here – I have talked to him about
> five times about go ahead and taking the gun on constructive possession.
> It's probably in his best interest. I hate to throw him under – you know, the
> best he is looking at is twenty years **now**.

> THE COURT:        Okay. You talk to him and I will finish up with –

> MR. DEEN: I talked to him. We have already got the plea
> agreement. I have talked to him about it 3 times.

> THE COURT:        Okay. I have an 11 o'clock phone conference.
> We have to get it done before 11 o'clock. Do you want to talk to him?

> MR. DEEN:   Give him one last chance.

> THE COURT:        I hate to mess this up midstream.

(*Id*. at 14.) The Court actually continued petitioner's plea colloquy to 2 o'clock on July 20,

2010, at which time Britt informed the Court that he wished to plead guilty to count four

of the indictment, in addition to count one. (Doc. 187, at 16.) As aforesaid, Britt's

---

on the door of the shed and no one responded. At this time, she entered the shed and the
ammonia odor was even stronger inside. . . . Deputy Busby obtained a search warrant for the
premises and obtained state court authorization to search. She returned to the trailer and the
officers searched the premises. . . . From other locations in the house [that is, separate from
Green's bedroom], the officers retrieve[d] a Coleman fuel torch, a glass Mason jar with residue, a
Remington sawed off shotgun . . . six glass jars (some with residue and some clean), a plastic
round Tupperware bowl containing crushed pill powder, a set of digital scales, a box of 390
milligrams of pseudoephedrine, a bag with tools and a propane valve, a fish tank aerator pump,
two [N]algene bottles containing two glass sample bottles (in the toilet and the tub where Britt
had attempted to dispose of the contents), a New England Firearms 4.10 single shot shotgun
(removed from the shed), a motion detector control with sensors, six 50-pound bags of
ammonium nitrate (removed from the shed).").)

counseled guilty pleas to the two counts were made in accordance with the earlier-signed plea agreement, as reflected by the comments his retained attorney made to the Court seeking additional time to convince his client to plead to both counts (*see id.* at 14), the comments of the Assistant United States Attorney when the parties returned to the courtroom at 2 o'clock (*see id.* at 16 ("My copy[9] is the one that we have used, Your Honor.")), the action of the deputy clerk in docketing the plea agreement—and attached factual resume—on July 21, 2010 (*see* Doc. 52), the Presentence Investigation Report (*see* Doc. 120, at 4 & 27 ("On July 20, 2010, **Britt** pleaded guilty to counts one and four, pursuant to a written plea agreement. . . . Pursuant to the written plea agreement, **Britt** has entered a plea of guilty to counts one and four of the indictment, in return for the dismissal of the remaining counts." (emphasis in original)), and the conversation at the March 2, 2011 sentencing hearing regarding petitioner's various debriefings by government agents and the government's ultimate determination that Britt had not given them enough information to warrant the filing of a motion for downward departure (*see* Doc. 188, at 10-13).[10]

---

[9]     This is clear reference to the plea agreement.

[10]     There would have been no reason for such conversation if Britt had not plead in accordance with the terms of the plea agreement he signed on July 19, 2010, nor would there have been any reason for Britt's sentencing to have been postponed for some eight (8) months following entry of the guilty plea had the government not extended petitioner the opportunity to cooperate. (*Compare* Docket Sheet and Doc. 188, at 12 ("I know we got the case put off one time before for him to help himself out more. He talked to the agents. He has been trying to do the best he can to remember things to provide the government cases they can work on in the future. But I realized talking to Ms. Bedwell and the agent they don't think he has given them enough to rise to any departure.") *with* Doc. 52, Plea Agreement, at 6 & 8 ("The defendant understands and agrees that he has no right to cooperate, and that the decision whether to allow him to cooperate is reserved solely to the United States in the exercise of its discretion. If the United States agrees to allow the defendant to cooperate, and if the defendant agrees to cooperate, the following terms and conditions apply: . . . g. *If* the defendant provides full, complete, truthful and substantial cooperation to the United States, which results in substantial assistance to the United States in the investigation or prosecution of another criminal offense, *a decision specifically* (Continued)

THE CLERK:      Continue on the record in criminal number 10-dash 116, United States versus Steven Terry Britt. What says the government?

MS. BEDWELL:      Ready Your Honor.

THE CLERK:      And the defendant?

MR. DEEN:      Ready.

THE COURT:      We had completed the plea colloquy except for taking the plea as to Count One. I understand you wish to plea[d] to Count Four?

MS. BEDWELL:      My copy is the one that we have used, Your Honor. So I don't have that before me.

MR. DEEN:      That's right, Judge. Yes, ma'am.

THE COURT:      Okay. Count four. Also. All right. Is that correct?

MR. DEEN:      Yes, ma'am.

THE COURT:      Count four carries a penalty of 60 months consecutive[,] $250,000 fine, 3 years supervised release and a hundred dollars special assessment. Count one, again, carries a penalty of 20 years to life, $8 million fine, 10 years supervised release and a hundred dollars special assessment. Do you understand those to be the penalties as to each of those?

MR. BRITT:      Yes, ma'am.

THE COURT:      Ms. Bedwell, if you could add to your factual statement . . . you have already stated and give us the elements and the facts on Count four.

.      .      .

[Under 924(c),] [t]he government would have to prove that the defendant

───────────────

*reserved by the United States in the exercise of its sole discretion,* then the United States agrees to move for a downward departure in accordance with Section 5K1.1 of the United States Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, whichever the United States deems applicable.").)

used or possessed a firearm during the course of a drug offense. And that that use or possession of the firearm during the course of the drug offense occurred in the Southern District of Alabama.

And what facts would you have to support that?

MS. BEDWELL:      I proffered the facts supporting that charge earlier this morning. The execution of the search warrant where the defendant was in the trailer with the codefendant. The doors and windows were bolted shut. The defendant was in the process of actual manufacturing when the officers arrived on the scene. Subsequently obtained the search warrant.

The defendant destroyed certain . . . evidence during the course of the officers['] attempt to enter the residence. And there were two firearms recovered from the residence. One from the room where the defendant was cooking, the other from a bedroom. And when I say cooking[,] I mean cooking meth. And those firearms function.

THE COURT:      Those weapons were a Remington 12-gauge shotgun and a New England firearm 410 single shotgun.

MS. BEDWELL:      Yes, ma'am. And both weapons traveled in interstate commerce to arrive in the State of Alabama. Neither was manufactured here.

THE COURT:      I don't think that is an element of the offense.

MS. BEDWELL:      It may not be but we can prove that.

THE COURT:      Do you agree the government could prove these additional facts against you?

MR. BRITT:      Yes, ma'am.

THE COURT:      Okay. Then how do you plead?

MR. BRITT:      Guilty.

THE COURT:      It's the finding of the Court in the case of United States versus Steven Terry Britt that the defendant is fully competent and capable of entering an informed plea. That the defendant is aware of the nature of the charges and the consequences of the plea. That the plea of guilty is a knowing and voluntar[y] plea supported by an independent basis in fact containing each of the essential elements of the offense. The plea is therefore accepted and the defendant is now adjudicated guilty of Count One and Four.

A written presentence report will be prepared by the probation office. You will be interviewed. You may have your attorney present. . . . At that time [sentencing] you may speak on your own behalf, you may bring witnesses and of course your attorney will be there to represent you.

MR. BRITT:        Yes, ma'am.

THE COURT:        Do you have any questions?

MR. BRITT:        No, ma'am.

(Doc. 187, at 16-17 & 18-20.)

The January 6, 2011 Presentence Investigation Report reads, in relevant part, as follows:

119.    **Statutory Provisions:**    **Count One** – The minimum term of imprisonment for this offense, a Class A felony, is 20 years, and the maximum term is life imprisonment, pursuant to 21 U.S.C. § 841(b)(1)(A) (Enhanced). **Count Four** – The authorized term of imprisonment for this offense, a Class A felony, is a mandatory minimum five years, up to a maximum of life, to be served consecutively to any other term of imprisonment imposed, pursuant to 18 U.S.C. § 924(c).

120.    **Guideline Provisions:**    **Count One** – Based on a total offense level of 29 and a criminal history category of III, the guideline range of imprisonment is 108 to 135 months. However, because count one carries a mandatory minimum penalty of 240 months, the guideline for imprisonment is 240 months, pursuant to U.S.S.G. § 5G1.1(b). **Count Four** – The authorized term of imprisonment for this offense is a mandatory minimum five years, to be served consecutively to any other term of imprisonment imposed.

.        .        .

132.    The assistant U.S. Attorney may file a motion, pursuant to U.S.S.G. § 5K1.1, advising that the defendant has provided substantial assistance to the government. Accordingly, the government may recommend a sentence below the mandatory minimum sentence and applicable guideline range.

(Doc. 120, at 27 & 29 (emphasis in original).)

On March 2, 2011, Britt was sentenced to the statutory mandatory minimum of twenty years imprisonment as to count one of the indictment and a consecutive five-year term of imprisonment as to count four. (*See* Doc. 188, at 14.) Despite Britt's plea for

leniency (*see id.* at 11-12 ("But I ask for all the leniency and all the favor you can give me today.")), and the Court's expressed sympathies with Britt's mother and aunt (*id.* at 12-13 ("I'm very sympathetic to his mother and aunt, I just can't imagine what it must feel like for them to have to go through this."), the Court's hands were tied in light of the government's decision to not ask for downward departure (*compare id.* at 13 ("[I]t doesn't matter whether I think you have cooperated or not. It's the government's decision whether you cooperated or not.") *with id.* ("MS. BEDWELL:  Your Honor, we submit to the Court that the statutory penalties apply in this defendant's case.")).[11]

> Pursuant to the sentencing reform act, the Court is required under statute to sentence Mr. Steven Terry Britt to the mandatory minimums as to Count One and Count Four of the original indictment. Therefore[,] it is hereby the judgment of this Court that you are to be imprisoned for a term of 300 months, that's 240 months as to count one and 60 months as to Count Four to be served consecutive to the sentence imposed in Count One.

.     .     .

> The Court has imposed the sentence because it's the mandatory required and no comment as to its appropriateness.

.     .     .

> I will hear your objections.

> MR. DEEN:   We have none.

> THE COURT:        From the government?

> MS. BEDWELL:       No, ma'am.

> THE COURT:        Sentence is imposed as stated. You have 14 days to file your notice of appeal if you wish to appeal. . . . I need some

---

[11] Britt certainly had an inkling that the government was not happy with the manner in which he "cooperated." (*See id.* at 12 ("I have told all the information I can. I didn't ask to be subpoenaed for Kenneth Green. If you are mad a[t] me about that, I told the truth about everything. No need to lie on this man [Green] to help myself.").)

assistance on the remaining counts. . . . He ple[]d guilty to the original indictment of Count One and Four. The remaining counts in the original indictment [are] Counts Two and Three, but then reindicted in superseding indictment and those become – excuse me, was remaining count of Six, the superseding indictment becomes Seven. I'm not sure which one is the appropriate one to dismiss. I dismiss both of them.

MS. BEDWELL:    The superseding indictment replaces the old indictment.

THE COURT:    Except to the extent that he has plead guilty.

MS. BEDWELL:    Yes, ma'am, to those counts.

THE COURT:    That is dismissed. Thank you.

(*Id*. at 14, 15 & 15-16; *see also* Doc. 158 (judgment reflecting the same sentence as to counts one and four of the indictment and the dismissal, on motion of the United States, of counts two, three, and seven).)

On March 29, 2011, Deen filed a motion to withdraw and therein indicated that he was retained to represent Britt only through trial or disposition of the matter in this Court but not on appeal. (*See* Doc. 168.) In an order entered on April 28, 2011, Judge DuBose instructed retained counsel to show cause, not later than May 12, 2011, why he had not complied with the provisions of Local Rule 83.7(b), by filing a notice of non-appeal or otherwise filing a notice of appeal if requested by Britt to take such action. (*See* Doc.  173.) Retained counsel's response to the Court's order was a May 4, 2011 motion seeking to withdraw his previously-filed motion to withdraw based upon Britt having pled guilty pursuant to a negotiated plea and his mistaken impression that Britt had filed a *pro se* notice of appeal; this pleading was docketed as a withdrawal of the motion to withdraw. (*See* Doc. 174.)

Britt filed his motion to vacate, pursuant to 28 U.S.C. § 2255, on February 21, 2012. (Doc. 186, at 17 (date placed in the prison mailing system).) Therein, Britt raises the

following claims of alleged ineffective assistance of trial counsel: (1) his attorney failed to protect his constitutional right to a fair and equitable plea agreement during plea negotiations "where in exchange for his guilty plea the government would have agreed to not pursue the 851 enhancement that doubled his sentence from ten (10) years to twenty (20) years[;]" (2) his attorney failed to conduct any pre-plea discovery, did not retain an investigator, and did not review the applicable law with respect to count four and relevant sentencing guidelines concerning count six; (3) his attorney failed to investigate and advise him under the grouping rule found in the sentencing guidelines manual that any punishments imposed against him for violating counts one and six would have been imposed concurrently; (4) his attorney failed to object to judicial interference in the plea negotiations regarding counts four and six; (5) his attorney failed to object to the government's failure to assert facts sufficient to prove the essential elements of the 924(c) violation charged in count four; and (6) his attorney erred in failing to advise him that he had fourteen (14) days to file an appeal. (Doc. 186, at 4-8.) In addition to these claims of ineffective assistance of counsel, Britt asserts the following as separate claims though they all appear interrelated: (1) judicial participation in or interference in plea negotiations; (2) the judicial participation in his guilty plea to count four, and his attorney's complicity, rendered his guilty plea involuntary; (3) the court abused its discretion in failing to advise Britt that he could appeal his sentence; (4) the court and his attorney intentionally colluded to involuntarily elicit his plea of guilty to count four; and (5) conflict of interest.[12]

---

[12]     This final "separate" claim, again, is actually another claim of alleged ineffective assistance of counsel.

**CONCLUSIONS OF LAW**

Section 2255 reads, in relevant part, as follows: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

I.    **Ineffective Assistance of Counsel**.    In this instance, Britt preeminently contends that constitutionally ineffective assistance of counsel entitles him to the relief afforded by 28 U.S.C. § 2255. In order to establish a claim of ineffective assistance of counsel, a petitioner is required to show (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *see also Jones v. United States,* 478 Fed.Appx. 536, 539-540 (11th Cir. Sept. 23, 2011) ("To make a successful claim of ineffective assistance of counsel, a defendant must show: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense."). [13] "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, and that []he was prejudiced by that performance." *Demar v. United*

---

[13]    "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

*States,* 228 Fed.Appx. 940, 950 (11th Cir. Jun. 21, 2007) (quotation marks, brackets and citations omitted); *see also Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail."), *cert. denied sub nom. Johnson v. Nagle*, 535 U.S. 926, 122 S.Ct. 1295, 152 L.Ed.2d 208 (2002).[14] The *Strickland v. Washington* standard for evaluating claims of ineffective assistance of counsel was held applicable to guilty pleas in *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

> To succeed on such a claim, "the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).[15] In addition, the defendant must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process."  *Hill*, 474 U.S. at 59, 106 S.Ct. at 370.  In other words, . . . [a petitioner] "must show that there is a reasonable probability that, but for counsel's errors, he would . . . have pleaded [not] guilty and would . . . have insisted on going to trial."  *Hill*, 474 U.S. at 59, 106 S.Ct. at 370.[16]

*Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995) (footnotes, brackets and ellipses added), *cert. denied sub nom. Coulter v. Jones*, 516 U.S. 1122, 116 S.Ct. 934, 133 L.Ed.2d 860

---

[14]    It is proper in considering claims made by a federal prisoner under § 2255 to look for guidance from cases discussing claims raised by state prisoners under 28 U.S.C. § 2254. *See Hagins v. United States*, 267 F.3d 1202, 1205 (11th Cir. 2001) (citing *Holladay v. Haley*, 209 F.3d 1243 (11th Cir. 2000)), *cert. denied*, 537 U.S. 1022, 123 S.Ct. 545, 154 L.Ed.2d 432 (2002).

[15]    "When analyzing ineffective-assistance claims, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Smith v. Singletary*, 170 F.3d 1051, 1053 (11th Cir. 1999) (citations omitted).

[16]    "The best way to evaluate whether there is a reasonable probability a petitioner would have insisted on going to trial is to determine whether petitioner had available a defense that would likely have borne fruit at trial." *Rosado v. Secretary, Dep't of Corrections*, 2010 WL 2976886, *4  (M.D. Fla. July 20, 2010) (citations omitted).

(1996). Indeed, in the guilty-plea context, the Eleventh Circuit has held that "'counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial.'"[17] *Carter v. United States*, 288 Fed.Appx. 648, 649 (11th Cir. Aug. 4, 2008), quoting *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984).

Given the two-prong nature of the test for adjudicating ineffective-assistance-of-counsel claims, it can come as no surprise that "'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" *Johnson, supra,* 256 F.3d at 1176 (citation omitted). When applying the *Strickland* standard, it is clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (citation omitted), *cert. denied sub nom. Oats v. Moore*, 527 U.S. 1008, 119 S.Ct. 2347, 144 L.Ed.2d 243 (1999); *see also Adamson v. United States,* 288 Fed.Appx. 591, 594 (11th Cir. July 29, 2008) ("The defendant must satisfy both prongs of this test to show a Sixth Amendment violation; if the defendant fails to demonstrate one of these prongs sufficiently, we do not need to address the other."), *cert. denied,* 555 U.S. 1010, 129 S.Ct. 526, 172 L.Ed.2d 385 (2008); *Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.").

---

[17] "'To impart such an understanding to the accused, counsel must, after making an independent examination of the facts, circumstances, pleadings and laws involved, offer his informed opinion as to the best course to be followed in protecting the interests of his client." *Id.,* quoting *Wofford,* 748 F.2d at 1508.

**A.**   **Petitioner's § 851 Enhancement Argument**.    Britt contends, in a conclusory manner, that his retained attorney (Jeff Deen) failed to protect his right to a fair and equitable plea agreement "where in exchange for his guilty plea the government would have agreed to not pursue the 851 enhancement that doubled his sentence from ten (10) years to twenty (20) years." (*See* Doc. 186, at 4.) As recently underscored by a district court in this Circuit, "[a] criminal defendant does not have the right to obtain a plea agreement with terms tailored to his liking." *Hernandez v. United* States, 2012 WL 728208, *2 (M.D. Fla. Mar. 6, 2012). This is because "the decision whether to offer a plea agreement and what terms to include in that agreement are matters of prosecutorial discretion[.]" *Id.,* citing *Weatherford v. Bursey,* 429 U.S. 545, 561, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977) ("[T]here is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial.") (other citation omitted). Given the government's discretion in this regard, along with record evidence placing Britt on notice of the applicability of the § 851 enhancement (Doc. 44)—as well as petitioner's admission of that prior felony drug conviction (*see* Doc. 188, at 9 ("First off[,] I would like to say I'm sorry . . . to you and coming back before [the court]. I was here [1]4 years ago for marijuana."))—petitioner's rank and conclusory speculation that his attorney could have bargained with the government for a more favorable plea agreement fails. *Compare Hernandez, supra* ("Vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim.") and *Williams v. United States,* 2011 WL 3268308, *5 (M.D. Fla. Aug. 1, 2011) (same) *with Chavez v. Secretary Florida Dep't of Corrections*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("The allegations must be factual and specific, not conclusory."), *cert. denied sub nom. Chavez v. Tucker,* ___ U.S. ___, 132 S.Ct.

1018, 181 L.Ed.2d 752 (2012). More specifically, petitioner has established neither ineffective assistance of counsel prong in this regard.

**B.    Retained Counsel's Alleged Failure to Conduct Pre-Plea Discovery**. Britt next contends that his attorney failed to conduct any meaningful pre-plea discovery, "including not retaining an investigator or reviewing the applicable statutory law with respect to count four, [] a 924(c) offense, and/or the relevant U.S.S.G. concerning count six." (Doc. 186, at 5.)

> [Counsel should have] [i]nterview[ed] co-defendant Green who admitted the gun in that room was his, and Britt had no knowledge of its location in a hiding place. Not to interview other individuals who knew Britt did not have, own, or ever carry a firearm [constitutes ineffective assistance of counsel]. [Finally, counsel should have] [h]ired an investigator to handle this matter.

(*Id*.)

In addressing this multi-pronged claim, the undersigned need note that the government clearly supplied Britt's attorney with discovery at arraignment in accordance with the local procedure in this district, SD ALA LR 16.13(b)(1)(A)-(H) (setting out the list of information that the government is required to tender to the defendant at arraignment or other date set by the Court, including "[a]ll discoverable information within the scope of Rule 16(a) of the Federal Rules of Criminal Procedure[.]"); *see* Fed.R.Crim.P. 16(a) (setting forth the information that the government is required to disclose to the defendant), inasmuch as the undersigned's June 23, 2010 order on arraignment merely contains a date by which Britt was to make his disclosures to the government (Doc. 25, at 1 ("Discovery in this action shall be conducted according to the requirements of SD ALA LR 16.13. Disclosures by the defendant, required in LR 16.13(b)(4), shall be accomplished no later than **July 6, 2010**.")). Accordingly, Britt's attorney was well aware of the evidence the government intended to offer in support of

the counts contained in the indictment and petitioner not once makes any argument that the government would have been unable to prove the conspiracy charge contained in count one of the complaint. Instead, Britt concedes that at all times—even now—he would enter a guilty plea as to count one of the indictment and argues only that his attorney should have investigated the § 924(c) firearm charge (count four) in order to develop evidence that "the gun in th[e] room" was not his gun and that he never owned or carried a firearm. There are numerous reasons, however, why this Court cannot find that the strategy pursued by Britt's attorney was one that no other competent counsel would have pursued.

Counsel in this case certainly knew that the residence in which the guns outlined in count four of the indictment were found was Green's residence (*see* Doc. 52, Factual Resume, at 19-21) and he also knew that when this Court began to take Britt's guilty plea on July 20, 2010, Britt did not desire to enter a plea to count four based upon his insistence that the firearms found in the search of Green's residence were not his firearms (*see* Doc. 187, at 5-6).[18] Deen also knew many other things, including the following: (1) Britt was arrested in Green's residence on the same date that the firearms were discovered and, indeed, he was cooking methamphetamine in his co-defendant's residence (and shed) at the time of his arrest (*see* Doc. 52, Factual Resume, at 20-21); (2) a violation of § 924(c) can be established through evidence of constructive possession (*see* Doc. 187, at 14),[19] among other theories[20]; and (3) in order for Britt to have an opportunity

---

[18]     Therefore, it is unclear to the undersigned how it would have "helped" Deen to know from individuals who knew Britt—but whom he has not identified—that he "did not have, own" or carry a firearm. (*See* Doc. 186, at 5.)

[19]     *Compare, e.g., United States v. Johnson,* 450 Fed.Appx. 878, 885 (11th Cir. Jan. 9, 2012) ("Possession can be actual or constructive, and the government can prove possession (Continued)

through direct or circumstantial evidence. Constructive possession exists when a defendant has knowledge of the item possessed coupled with the ability to exert control over it or over the premises . . . in which the contraband was concealed." (internal citations omitted)) and *United States v. Perez,* 661 F.3d 568, 576 (11th Cir. 2011) ("Possession of a firearm may be either actual or constructive. Constructive possession of a firearm exists when a defendant does not have actual possession but instead has the power or right, and intention to exercise dominion and control over the forearm. A defendant's presence in the vicinity of a firearm or mere association with another who possesses that gun is insufficient; however, at the same time, the firearm need not be on or near the defendant's person in order to amount to knowing possession. As long as the Government proves, through either direct or circumstantial evidence that the defendant (1) was aware or knew of the firearm's presence and (2) had the ability and intent to later exercise dominion and control over that firearm, the defendant's constructive possession of that firearm is shown." (internal citations, quotation marks and brackets omitted)) *with United States v. Molina,* 443 F.3d 824, 830 (11th Cir. 2006) (concluding that sufficient evidence existed to support firearms verdicts where the gun was accessible and was in close proximity to drugs, digital scales, and a large amount of money); *see United States v. Wright,* 392 F.3d 1269, 1273, 1273-1274 & 1274 (11th Cir. 2004) ("The government need not prove actual possession in order to fulfill the 'knowing' requirement of § 922(g)(1). Rather, it may be shown through constructive possession. The firearm need not be on or near the defendant's person in order to amount to knowing possession. Moreover, we have held . . . [] a defendant had knowing possession of a firearm when driving a car with the weapon beneath the driver's seat. In the instant case, a reasonable jury could believe beyond a reasonable doubt that Wright was in knowing possession of the firearm. Possession can be shown by circumstantial as well as direct evidence. Possession can be either actual or constructive. In order to establish constructive possession, the government must produce evidence showing ownership, dominion, or control over the contraband itself . . . or the vehicle in which contraband is concealed. There is no dispute that there was a weapon in the vehicle. Officers found the firearm under Wright's seat, next to an open bottle of cold beer. Wright owned the automobile in which the firearm was carried. Wright had been operating the car when the officers pulled him over. Evidence showed Wright was driving under the influence and once officers attempted to arrest him, Wright aggressively resisted, which could indicate that Wright only resisted after he realized officers would impound the car and discover the gun. . . . ***The fact that Wright's father testified that the gun belonged to him and that he accidently left it in his son's vehicle does not detract from the evidence.***" (internal citations and quotation marks omitted; emphasis supplied)), *cert. denied,* 544 U.S. 968, 125 S.Ct. 1751, 161 L.Ed.2d 615 (2005).

[20]     *Compare United States v. Myrie,* 479 Fed.Appx. 898, 903 (11th Cir. June 21, 2012) ("To convict a defendant under 18 U.S.C. § 924(c), the government must show that, during and in relation to a drug-trafficking offense, the defendant used, carried or possessed a firearm in furtherance of that crime. A defendant may be liable under a *Pinkerton* theory for a co-defendant's gun possession if the possession was reasonably foreseeable. An absent conspirator may be found guilty of violating § 924(c) if the carrying or using of a firearm by a coconspirator is a reasonably foreseeable action of the conspiracy. We have previously stated that guns and drugs go together hand-in-hand." (internal quotation marks, citations and brackets omitted)), *cert. denied,* ___ U.S. ___, 133 S.Ct. 805, 184 L.Ed.2d 596 (2012), *with, e.g., United States v. Womack,* 364 Fed.Appx. 560, 563 (11th Cir. Feb. 4, 2010) ("To prove aiding and abetting a § 924(c) offense, the government must show that the substantive offense of carrying or using a firearm in relation (Continued)

to plead in accordance with the plea agreement signed on July 19, 2010 (both by Britt and Deen) and have the possibility of the United States make a motion for downward departure,[21] the government was insisting that his client plead to both the conspiracy charge and the firearms charge (*see* Doc. 187, at 5-6 & 14). In light of the foregoing, it was reasonable strategy for Deen to counsel Britt to plead guilty to both counts one and four of the indictment in order to preserve the chance of the government moving for downward departure upon Britt cooperating with the United States, instead of throwing Britt under the proverbial bus by allowing him to plead to count one and a guaranteed twenty-year sentence without a chance for downward departure,[22] followed by a trial on

_____

to a crime of violence was committed, that the defendant was associated himself with the criminal venture, and that he committed some act that furthered the crime. At trial, Donald admitted discharging the firearm while committing a crime of violence—the bank robbery. Witnesses corroborated this testimony, stating that Donald entered the bank and fired two shots into the ceiling. The evidence also established that Womack associated himself with the bank robbery and committed acts in furtherance of both the bank robbery and the discharge of the firearm. With respect to the bank robbery, Donald testified that Womack drove him to the bank to commit the robbery and, after the robbery, drove the get-away car. With respect to the § 924(c) offense, Donald testified that Womack arranged to pick up the firearm that would be used in the robbery, drove to pick up the firearm, and took possession of the firearm. The evidence, therefore, established that Womack aided and abetted the commission of the § 924(c) offense, which involved the discharge of the firearm. Because Womack aided and abetted the offense, he is punishable as a principal." (internal citations and quotation marks omitted)), *cert. denied*, U.S. ___, 130 S.Ct. 3378, 176 L.Ed.2d 1262 (2010).

[21]     Of course, Deen knew that a government motion for downward departure was the only way to cut into the statutory minimum sentence(s) his client was facing.

[22]     Britt's conclusory arguments that Deen coerced his guilty plea (*see, e.g.*, Doc. 186, at 8 ("And he improperly forced Britt to plead guilty to count four by the threat he would get 35 yrs. if he went to trial.")) fly in the face of petitioner's representations to the Court during his guilty plea proceeding (*see* Doc. 187, at 17 & 19 (Britt's statements of his understanding that count four carried a 60-month consecutive sentence, that the government could prove additional facts regarding the firearm count, and that he was guilty of count four)) and certainly do not establish either the cause or prejudice prong of *Strickland* (that his attorney acted unreasonably/deficiently and a reasonable probability exists that but for any errors by counsel, Britt would not have pleaded guilty and would have insisted on going to trial). *See United States v. Wilson*, 337 Fed. Appx 747, 749 (10th Cir. June 30, 2009) (in an action in which a defendant's allegations of ineffectiveness of counsel, likes Britt's, "were vague, especially compared to the (Continued)

the remaining counts of the indictment.[23]  Accordingly, Deen simply was not deficient in this regard.[24]

    **C.**    **Grouping Rule Under the Sentencing Guidelines**.  Britt argues that his attorney should have investigated the grouping rule found in Chapter 3 of the

overwhelming evidence against [him,]" denying certificate of appealability and affirming district court's conclusion "that Wilson's allegation that his guilty plea was coerced by his trial counsel was inconsistent with the record of the proceedings, and that Wilson had therefore failed to establish that his counsel was ineffective or that Wilson was prejudiced in his defense"), *cert. denied*, 558 U.S. 1134, 130 S.Ct. 1111, 175 L.Ed.2d 923 (2010); *United States v. Robinson*, 64 F.3d 403, 405 (8th Cir. Aug. 28, 1995) ("As to Robinson's ineffective assistance claim, we agree with the district court that his allegations of coercion are vague and conclusory and do not warrant an evidentiary hearing."); *see also Patterson v. United States*, 2011 WL 6090249, at *2 (N.D. Tex. Nov. 16, 2011) ("Petitioner claims that counsel allowed him to enter into a coerced guilty plea. However, Petitioner fails to cite any facts that show how his plea was coerced.  Conclusory allegations are insufficient to prove claims of ineffective assistance of counsel.  Prisoners challenging their guilty pleas on collateral review must overcome a strong presumption of verity accorded solemn declarations made in open court.  Prisoners must also overcome the presumption of regularity and great weight accorded court documents." (internal citations and quotation marks omitted)), *report and recommendation adopted*, 2011 WL 6219567 (N.D. Tex. Dec. 7, 2011); *McAfee v. United States*, 2006 WL 3747329, at *3 (M.D. Fla. Dec. 18, 2006) ("Given the strong presumption of verity accorded Petitioner's sworn statements during his plea hearing, his conclusory allegation of ineffective assistance of counsel, unsupported by specifics, is subject to summary dismissal, as are his contentions that are wholly incredible in the face of the record. Accordingly, given Petitioner's sworn statements during the plea colloquy and in his plea agreement that he was pleading guilty freely and voluntarily without threats, force, intimidation, or coercion of any kind, Petitioner's allegations that his attorney influenced him to agree to the appeal waiver are refuted by the record.  His claim of ineffective assistance is without merit." (internal citations, quotation marks, and ellipses omitted)); *cf. United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997) ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea.").

    [23]      This scenario is what Deen was referencing with his "throw under" sidebar comment to the Court, nothing more or less.

    [24]      Britt's conclusory reference to the import of sentencing guidelines with respect to count six (Doc. 186, at 5) are of no moment particularly since he appears to have "given up" on this argument in his traverse to the government's response (*see* Doc. 193, at 5). Nevertheless, it is the undersigned's position that it does not make Deen's strategy any less reasonable even assuming the Court would not have "run" any sentence under count six consecutive to the sentences under count one and count four. The reasonableness of Deen's strategy is not undermined given that the only way petitioner had any chance for a reduction in his mandatory minimum 20-year sentence on the conspiracy count (and consecutive 5-year sentence on the firearm count) was for him to plead guilty to both counts, cooperate with the United States, and have the government file a downward departure motion.

Sentencing Guidelines and determined that even if he had gone to trial (and was convicted) on counts four and six, he would not have been sentenced to a 35-year term of imprisonment—as counsel told him—but the very same 25 years he is currently serving. (*See* Doc. 186, at 5-6.) Even assuming the soundness of Britt's "grouping" argument, it does not undermine the soundness of Deen's strategy in counseling petitioner to plead guilty to counts one and four under the plea agreement since it was Deen's aim to provide Britt with a conduit to reduce his sentence—by cooperating with the government—which would have been unavailable to petitioner had he pled guilty only to count one and insisted on going to trial on all remaining counts. Again, Deen was not deficient in this regard.

D.    **Deen's Alleged Failure to Object to Judicial Interference in the Plea Negotiations**. Petitioner contends that the trial court interfered in the plea negotiations by "directing" Deen to talk to Britt following a sidebar conference. (*See* Doc. 186, at 6-7.) The undersigned need not again set forth the contents of the sidebar conference but simply notes that following Deen again talking to Britt, the petitioner entered counseled guilty pleas to counts one and four under the terms of the earlier-negotiated (and signed) plea agreement.

Rule 11(c)(1) of the Federal Rules of Criminal Procedure certainly provides that "[t]he court must not participate in [plea] discussions[]" engaged in by a defendant's attorney and an attorney for the government. *Id*. The Eleventh Circuit has determined that this "rule imposes 'an absolute prohibition on all forms of judicial participation in . . . the plea negotiation process.' . . . Simply put, district courts should not offer any comments 'touching upon' this subject." *United States v. Tobin*, 676 F.3d 1264, 1307 (11th Cir. 2012) (citations omitted).

24

In *United States v. Casallas*, 59 F.3d 1173 (11th Cir. 1995), the defendant informed the district court at the beginning of a change-of-plea hearing that he no longer wished to plead guilty. After some discussion about the charges that the defendant faced, the district court said: "I suggest to the Defendant that he talk to his lawyer some and see if [not pleading guilty] is really what he wants to do." We observed that "these comments were innocuous and intended only to insure that [the defendant] was making an informed decision." We nonetheless concluded that the district court "crossed the line." Adhering to the "bright-line-rule" that "prohibits the participation of the judge in plea negotiations under any circumstances," we made it clear that we will not "become involved in evaluating the degree of judicial participation."

.       .       .

Here, the District Court's comments "crossed the line." The District Court explicitly indicated that it would like the defendants to begin and engage in plea discussions. The District Court addressed both defense counsel and the defendants themselves in individual colloquies on this subject. During that time, the District Court reminded the parties that it would be sentencing the defendants and that it has a "great deal of discretion" in that regard. The District Court also went to great lengths to make sure that the defendants understood the sentencing guidelines for the counts with which they were charged. The District Court also repeatedly drew attention to additional repercussions that could flow from a conviction on all counts, such as the potential loss of the defendants' professional licenses.

*Id.* at 1304 & 1306-1307 (internal citations omitted).

Considering the comments made by the Court in this case during the sidebar conference conducted at the behest of defense counsel, nothing about those comments "crossed" Rule 11's "bright line." Indeed, the Court did not "direct" defense counsel to talk to his client, as petitioner has suggested. Instead, the Court simply clarified with counsel that he wanted additional time to speak to his client and, once clarified, granted such request. This Court never suggested to Britt that he speak to Deen to make sure he did not want to plead to both counts one and four (only count one), *see Casallas, supra*, and certainly offered no comments of the kind found "line crossing" in *Tobin, supra*. In short, this Court did not judicially interfere in any plea "discussions." Consequently,

Deen was not deficient in failing to interpose an objection. There can be no deficient performance by an attorney based on a non-existent claim.

E.    **Deen's Alleged Failure to Object to the Government's Proffer of Facts Regarding the Firearm Charge.**    Britt contends that his attorney was deficient in failing to object to the government's failure to set forth facts sufficient "to prove the essential elements of the 924(c) violation charged in Count 4[.]" (Doc. 186, at 7-8.)

> To establish a § 924(c)(1) violation, the government must show that: (1) the defendant possessed the firearm; and (2) the firearm in question "helped, furthered, promoted, or advanced" the alleged drug trafficking activity. Regarding the first element, when a defendant owns or otherwise exercises control over a residence where contraband is found, he may be found in constructive possession of the contraband. Regarding the second element, there must be "some nexus between the firearm and the drug selling operation." In other words, the gun must "facilitate," or have the potential of facilitating, the drug trafficking offense."

*United States v. Jones*, 480 Fed.Appx. 555, 562 (11th Cir. Jul. 9, 2012) (internal citations omitted), *cert. denied*, ___ U.S. ___, 133 S.Ct. 963, 184 L.Ed.2d 748 (2013).[25] Looking both to the government's proffer (Doc. 187, at 18-19; *see also id*. at 10-12) and the factual resume (Doc. 52, Factual Resume, at 20-22), *see id*. at 563 ("Between the proffer and the factual resume, the district court had sufficient facts upon which to support Jones's plea."), defense counsel was not deficient in the manner claimed by Britt because the facts presented to this Court were sufficient to support petitioner's plea to count four (*compare* Doc. 187, at 18-19 ("The execution of the search warrant where the defendant was in the trailer with the codefendant. The doors and windows were bolted shut. The defendant was in the process of actual manufacturing when the officers arrived on the scene.

---

[25]    As previously indicated, there were other theories of liability which could have been pursued by the government had petitioner chosen to go to trial on count four of the indictment, including a theory of aiding and abetting his co-defendant Green, as well as perhaps a *Pinkerton* theory.

Subsequently obtained the search warrant. The defendant destroyed certain of the evidence during the course of the officers['] attempt to enter the residence. And there were two firearms [a Remington 12-gauge shotgun and a New England firearm 410 single shotgun] recovered from the residence. One from the room where the defendant was cooking, the other from a bedroom. And when I say cooking I mean cooking meth. And those firearms function.") *with* Doc. 52, at 20-22 (a sheriff's deputy observed Britt walk past the back door of his co-defendant's trailer carrying a glass jar that was smoking and thereafter police entered the trailer to prevent petitioner "from destroying evidence of the [methamphetamine] manufacturing process they believed to be ongoing at that time[,]" and upon entry they detected the "overwhelming odor of ammonia" and struggled with Britt in an attempt to prevent him from destroying evidence in the toilet and bathtub; removed from Britt's person a white baggie containing meth residue, several small baggies, and other drug paraphernalia; detected an ammonia smell from a shed behind the trailer and discovered in the search of same six 50-pound bags of ammonium nitrate and a New England Firearms 4.10 single shot shotgun; and discovered in rooms—other than the bedroom—of his co-defendant's trailer a Coleman fuel torch, a glass Mason jar with residue, a Remington sawed off shotgun, a Tupperware bowl containing crushed pill powder, digital scales, "a box of 390 milligrams of pseudoephedrine, a bag with tools and a propane valve, a fish tank aerator pump, [and] two [N]algene bottles containing two glass sample bottles (in the toilet and the tub where Britt had attempted to dispose of the contents)"). *See id.* at 563 ("The proffer indicated that, on December 29, 2008, the date charged in Count 9, police discovered a methamphetamine manufacturing lab at his address. The factual resume elaborated that the police also found methamphetamine on his person, and

27

pseudoephedrine, digital scales, and baggies inside his trailer. Because the recovered guns were found in close proximity to these materials, a fact-finder could infer that they furthered drug-trafficking activity. . . . Although Jones correctly highlights that he denied to police that he owned the methamphetamine manufacturing materials outside the trailer, this fact did not exonerate him, as he insists. Rather, the fact that he resided alone at the trailer gives rise to an inference of possession, and, in any event, Jones expressly admitted that he resided in the trailer and everything inside it, including materials indicative of drug trafficking, belonged to him. As such, there was sufficient evidence upon which the district court reasonably could infer that Jones's guns facilitated, or at least had the potential to facilitate, his methamphetamine manufacturing activities." (internal citations omitted)).[26]

---

[26]    Given the evidence in this case, Britt simply has no basis for arguing—as he does in his motion to amend filed on November 7, 2012 (see Doc. 196, at 1 & 3-4)—that he is "actually innocent" of the § 924(c)(1) firearm charge. *See Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998) ("To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely then not that no reasonable juror would have convicted him. . . . It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." (most internal quotation marks omitted; citations omitted)).

Britt additionally contends in his proposed "amendment" that the indictment in his case was fatally defective as to all counts in which he was charged (that is, counts one, three, four and six) because omitted from the indictment were "the words Aids and Abets, Counsel[s], Commands, induces, and Procures[.]" (Doc. 196, at 2.) Britt's argument in this regard is simply specious inasmuch as "aiding and abetting under 18 U.S.C. § 2 'does not represent a distinct offense, but rather simply codifies an *alternate theory of liability inherent in every count, whether explicit or implicit*[.]' . . . '[T]he rule is well-established [] that one who has been indicted as a principal may be convicted on evidence showing that he merely aided and abetted the commission of the offense.'" *United States v. Jarvis,* 335 Fed.Appx. 845, 847 (11th Cir. June 19, 2009) (emphasis supplied), quoting *United States v. Hassoun,* 476 F.3d 1181, 1183 n.2 (11th Cir. 2007); *see* 18 U.S.C. § 2(a) ("Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."). In other words, "[a]iding and abetting need not be specifically alleged in the indictment; assuming the evidence supports it, the accused can be convicted of aiding and abetting so long as the jury is instructed on it." *United States v. Martin,* 747 F.2d 1404, 1407 (11th Cir. 1984).

In light of the foregoing, petitioner's motion to amend (Doc. 196) is **DENIED**.

**F.    Deen's Alleged Failure to Advise Petitioner that he had 14 Days to File an Appeal**.  Britt's final claim of ineffective assistance of counsel, at least putatively,[27] is that Deen failed to advise him that he had 14 days to file an appeal. (Doc. 186, at 8.) Petitioner cannot establish prejudice in this regard because the record is clear that the court advised petitioner that he had 14 days to file a notice of appeal. (Doc. 188, at 15 ("Sentence is imposed as stated. You have 14 days to file your notice of appeal if you wish to appeal.").)

**II.    Petitioner's Other Claims**.   Petitioner directs several challenges to the Court's conduct and, more specifically, the Court's alleged interference in plea negotiations and colluding with his attorney to coerce a guilty plea to count four of the indictment. While the undersigned is of the opinion that all of these claims are procedurally barred from review based on Britt's failure to challenge these alleged errors on appeal,[28] as explained hereinafter all such claims also totally lack any merit (or evidentiary support).

---

[27]    The undersigned says "putatively" because the final claim Britt raises in his § 2255 motion is "conflict of interest." (*See* Doc. 186, at 12-14.) Although this claim, in truth, is nothing other than an ineffective assistance of counsel claim, the undersigned deals with it separately since petitioner has separated it from his other claims of alleged ineffective assistance of counsel.

[28]    "A defendant who fails to object at the trial court level to error he believes the court has committed or fails to raise such objection on appeal is procedurally barred from presenting his objection in a motion subsequently filed under 28 U.S.C. § 2255 absent a showing of cause and prejudice or a fundamental miscarriage of justice," *Genge v. United States*, 279 Fed. Appx. 897, 898 (11th Cir. May 30, 2008) (per curiam) (citing *United States v. Frady*, 456 U.S. 152, 166-68, 102 S.Ct. 1584, 1593-94, 71 L.Ed.2d 816 (1982); *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994)), showings to which Britt only pays lip service (*see* Doc. 193, at 6). Moreover, merely asserting a substantive claim of ineffective assistance of counsel (*see id.*) does not "establish[] cause to excuse [ ] procedural default"; "*in order to constitute cause, ineffective assistance claims must have merit.*"  *Reynolds v. United States*, 2010 WL 1006257, *4 (S.D. Ga. Jan. 26, 2010) (citing *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000)) (emphasis added), *report and recommendation adopted*, 2010 WL 1006253 (S.D. Ga. Mar. 17, 2010).  And, as explained at length in this recommendation, Britt has failed to make a meritorious substantive claim for ineffective assistance of counsel.  Accordingly, Britt has defaulted on these grounds challenging (Continued)

**A.**     <u>**Judicial Participation in or Interference in Plea Negotiations**</u>.  Because the undersigned has previously determined, in the context of petitioner's claim of ineffective assistance of counsel, that the Court did not participate in or in any way interfere in the plea negotiations, it need only be noted here that petitioner's claim in this regard has no merit.

**B.**     <u>**The Judicial Participation in Britt's Ensuing Guilty Plea to Count Four and His Attorney's Complicity in Implementing the Court's Will Rendered his Guilty Plea Involuntary**</u>.  Beyond noting that this is simply a rehashing of petitioner's baseless judicial interference argument, the undersigned need also make explicit that it was not the Court's "will" that Britt plead guilty to count four inasmuch as the  Court stood ready and willing to take petitioner's plea to count one and try him on all remaining counts, including count four.[29] Rather, as the record reflects, the Court simply granted defense counsel's request to speak to his client one additional time and it was during this additional conversation that Deen convinced Britt that it was in his best interests to plead guilty to count four, in combination with count one, in order to get the benefits of the plea agreement, including a motion for downward departure by the government upon a determination by the United States that substantial assistance had been provided by petitioner. Nothing about this scenario undermines the voluntary and knowing nature of petitioner's pleas of guilty to counts one and four. Indeed, this was the only logical choice for Britt since it represented the only avenue through which he could

---

the manner in which the Court conducted itself on July 20, 2010.

[29]     These "facts" are reflected in the record of petitioner's guilty plea proceeding. (*See* Doc. 187.)

obtain a reduction in his sentence.[30]

      **C.**     **Abuse of Discretion for the Court to Fail to Advise Britt that he could**

**Appeal his Sentence**.  This claim has absolutely no merit because the Court in this case

clearly informed petitioner at sentencing that he had 14 days to file written notice of

appeal if he wanted to appeal. (Doc. 188, at 15 ("Sentence is imposed as stated. You have

14 days to file your notice of appeal if you wish to appeal.").)

      **D.**     **The Court and Britt's Attorney Intentionally Colluded to Involuntarily**

**Elicit his Plea of Guilty to Count Four**.  In support of this argument petitioner simply

states that he "adopts the factual basis to his six[th] claim[], Volume I and II of the

Change of Plea Transcripts[.]" (Doc. 186, at 12.) Beyond noting that this conclusory

argument is due to be rejected on its face, the undersigned would note that it is simply a

rehashing of petitioner's previous judicial interference claims and need be rejected for

the reasons specifically stated. At the risk of continuing to beat a dead horse, the

undersigned would simply point out that the record is devoid of any evidence of

collusion between the Court and defense counsel.

      **E.**     **Conflict of Interest.**  Britt's final claim raised in his § 2255 motion is that

his attorney harbor under conflicting interests. (*Compare* Doc. 186, at 12-14 *with* Doc. 193,

at 6-15.)

> [T]he conflict of interest herein complained about occurred when Britt's
> attorney was faced with conflicting interests such as law enforcement
> deputies who wanted to debrief Britt and imposing a longer sentence on
> him, 25 years, with no avenue for relief but to seek a 5K.1 downward
> departure for substantial assistance to the government; (2) conceding to the

---

[30]    That Britt did not receive a reduction in his sentence is of no moment. Indeed, he has only himself to blame in this regard since he did not provide substantial assistance to the government.

Court's expressed interest in managing its docket and conserving limited judicial resources; and (3) the government's interest in not having to prepare for trial and its costs[] plus opening up potential avenues of information and more prosecutions.

These other interests weighed against and conflicted with his client's interest in pleading to the conspiracy count with its mandatory 20 year sentence pursuant to an 851 enhancement notice based on a drug prior[] [a]nd going to trial on the 924(c) count [and count 6 brought against Britt in the superseding indictment but not included in the plea agreement] where the government would not drop count four.

It was to Britt's interest to fight the gun where as he sated during these proceedings[,] [he] did not know the gun was there. And a co-defendant who owned the trailer where the gun was found admitted it was his and he had secreted it in the room in his trailer where Britt was alleged to have been cooking meth.

(Doc. 186, at 12-13.) As the undersigned has previously indicated, although petitioner has "separated" this claim from all other ineffective assistance of counsel claims, it clearly falls in that category (*see, e.g.*, Doc. 193, at 6-7 (arguing his attorney operated under a conflict of interest)) and the undersigned properly treats it as such.

As explained by the Eleventh Circuit in *McCorkle v. United States*, 325 Fed. Appx. 804, 2009 WL 1132355 (11th Cir. Apr. 28, 2009), *cert. denied*, 558 U.S. 865, 130 S.Ct. 176, 175 L.Ed.2d 111 (2009):

Where an ineffective assistance claim is based on a conflict of interest, a defendant must show first, that his attorney had an actual conflict of interest, and second, that the conflict adversely affected counsel's performance. An actual conflict of interest occurs when a lawyer has inconsistent interests. The conflict cannot be merely possible, speculative, or hypothetical.

To distinguish between actual and possible conflicts of interest, we will not find an actual conflict of interest unless the defendant can point to specific instances in the record to suggest an actual conflict or impairment of his interests. The defendant must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative causes of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to himself. If he did not make such a choice, the conflict remain(s) hypothetical. To prove adverse effect, a defendant needs to demonstrate: (a) that the defense attorney could have

32

> pursued a plausible alternative strategy, (b) that this alternative strategy was reasonable, and (c) that the alternative strategy was not followed because it conflicted with the attorney's external loyalties.

*Id.* at 808 (internal quotation marks, citations, and brackets omitted). As was true in *McCorkle*, the same is true here and that is Deen "did not have an actual conflict of interest that adversely effected his representation" of Britt;[31] therefore, "petitioner was not denied effective assistance of counsel." *Id.*[32]

**III.   Evidentiary Hearing**.  There is no need for a hearing in this matter because Britt has failed to proffer "***credible*** and ***specific evidence*** entitling him to relief." *United States v. Salmoran-Calderon*, 2012 WL 6827478, *20 (N.D. Fla. Nov. 27, 2012) (citations omitted; emphasis supplied), *report and recommendation adopted,* 2013 WL 132481 (N.D. Fla. Jan. 10, 2013). In other words, petitioner is not entitled to an evidentiary hearing in this case because his allegations are either frivolous, affirmatively contradicted by the record, or, otherwise, even taking the facts he states as true, same would not entitle him to relief. *Aron v. United States,* 291 F.3d 708, 714-715 (11th Cir. 2002) ("[I]f the petitioner 'alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim.' . . . Although we have stated that a district court is not required to hold an evidentiary hearing where the petitioner's

---

[31]   In particular, petitioner has made no factual showing of inconsistent interests. More specifically, Britt nowhere establishes that Deen represented a co-defendant or (potential) prosecution witness and "'made a choice between possible alternative course of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to himself [that is, Britt,]'" *McCorkle, supra,* 325 Fed.Appx. at 808, nor has he provided any evidence of a conflict of interest of the type identified in *United States v. McLain,* 823 F.2d 1457, 1463-1464 (11th Cir. 1987) (finding a conflict of interest where the prosecutor prosecuting McLain was investigating the defendant's attorney on an unrelated matter); *see also United States v. Novaton,* 271 F.3d 968, 1009-1012 (11th Cir. 2001) (finding no actual conflict between the interests of Cuni and his attorney who continued to represent Cuni "despite the possibility that he was being investigated by the same United States Attorney's Office in connection with a different case.").

[32]   Petitioner's claim in this regard is specious.

33

allegations are affirmatively contradicted by the record, or the claims are patently frivolous, no such circumstances are present here." (internal citations omitted)); *see also United States v. Bejacmar*, 217 Fed.Appx. 919, 921 (11th Cir. Feb. 15, 2007) ("[I]f the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous, a district court is not required to hold an evidentiary hearing."); *see Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) ("A petitioner is *not* entitled to an evidentiary hearing . . . when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." (internal quotation marks omitted)), *cert. denied sub nom. Tejada v. Singletary*, 502 U.S. 1105, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992); *cf. Lynn v. United States*, 365 F.3d 1225, 1239 (11th Cir.) ("Because the 1999 affidavits submitted by Lynn amount to nothing more than mere conclusory allegations, the district court was not required to hold an evidentiary hearing on the issues and correctly denied Lynn's § 2255 motion."), *cert. denied,* 543 U.S. 891, 125 S.Ct. 167, 160 L.Ed.2d 154 (2004).

**IV.   Certificate of Appealability**.   In consideration of the foregoing, the Magistrate Judge recommends that the Court deny Britt's motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. Moreover, pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1).   A certificate of

34

appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2).

Because all the non-ineffective-assistance-of-counsel claims are procedurally barred,[33] Britt is not entitled to a certificate of appealability on those claims. Where, as in the case of the non-ineffective-assistance-of-counsel claims presented here, a habeas petition is being denied on procedural grounds without reaching the merits of the underlying constitutional claims, "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). Inasmuch as unexcused procedurally defaulted claims are barred from a § 2255 proceeding, *see Lynn*, 365 F.3d at 1234, a reasonable jurist could not conclude either that this Court is in error in dismissing those claims in the instant petition or that Britt should be allowed to proceed further on these claims. *See Slack*, 529 U.S. at 484, 120 S.Ct. at 1604 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the

---

[33] As heretofore explained, these claims also lack any merit. Therefore, with respect to these claims, the undersigned additionally recommends that the Court find that reasonable jurists could not debate whether his § 2255 motion to vacate should be resolved in a different manner or that any of the remaining issues presented are adequate to deserve encouragement to proceed further.

case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.").

Britt, similarly, is not entitled to a certificate of appealability on his ineffective-assistance-of-counsel claims.  Where, as is the case for Britt's ineffective-assistance-of-counsel claims here, a habeas petition is being denied entirely on the merits of an underlying constitutional claim, a COA should issue only when Britt demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[,]" *Slack*, 529 U.S. at 484; *see also id.* at 483–84 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'").  With respect to Britt's ineffective-assistance-of-counsel claims, the undersigned recommends that the Court find that reasonable jurists could not debate whether his § 2255 motion to vacate should be resolved in a different manner or that any of the remaining issues presented are adequate to deserve encouragement to proceed further.  Accordingly, petitioner is not entitled to a certificate of appealability as to these claims.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *Brightwell v. Patterson*, CA 11-0165-WS-C, Doc. 14 (Eleventh Circuit order denying petitioner's motions for a COA and to appeal IFP in a case in which this

Court set out the foregoing procedure); *see also Castrejon v. United States*, 2011 WL 3241817, *20 (S.D. Ala. June 28, 2011) (providing for the same procedure), *report and recommendation adopted,* 2011 WL 3241580 (S.D. Ala. July 29, 2011); *Griffin v. DeRosa*, 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), *report and recommendation adopted sub nom. Griffin v. Butterworth,* 2010 WL 3943699 (N.D.Fla. Oct. 5, 2010).

## CONCLUSION

The Magistrate Judge is of the opinion that petitioner's rights were not violated in this cause and that his request to vacate, set aside or correct his sentence (Doc. 186), should be **DENIED**. Petitioner is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis*.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. L.R. 72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 28th day of June, 2013.

  s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**